1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

SIMON OKELO,

CASE NO. C22-221 MJP

11

Plaintiff,

ORDER GRANTING MOTION TO
COMPEL ARBITRATION

12

v.

13

ANTIOCH UNIVERSITY, a foreign
nonprofit corporation; JANE and JOHN
DOES 1-5, individuals or entities,

14

15

Defendants.

16

17      This matter is before the Court on Defendant Antioch University's motion to compel

18  arbitration.  (Dkt. No. 4.)  Having considered the motion and supporting declarations, (Dkt. Nos.

19  4–6), Plaintiff's response and supporting declarations, (Dkt. Nos. 8–10), and the reply and

20  supporting declaration, (Dkt. Nos. 11, 12), the Court GRANTS the motion.  The Court ORDERS

21  that Plaintiff's claims are DISMISSED without prejudice to his right to pursue them in

22  arbitration under Defendant's arbitration policy.

23

24

**Background**

**A.    Complaint and Removal**

Simon Okelo filed this employment-discrimination case in King County Superior Court against Antioch University and five unnamed defendants.  (Complaint, Dkt. No. 1, Attach. 1.) Plaintiff was employed by Antioch as a social media manager from September 2020 until May 2021.  (Compl. ¶¶ 7, 10.)  He is Black and was born and raised in Kenya before he moved to the United States, in 2010.  (Declaration of Simon Okelo ¶ 2, Dkt. No. 9.)  Plaintiff claims he faced racial discrimination at work—in the form of racist discipline from his supervisor and being replaced by a less-qualified Caucasian employee as host of a podcast—and was terminated in retaliation for complaining about the discrimination.  (Compl. ¶¶ 7–12.)  He has raised state-law claims for employment discrimination, racial discrimination, and torts.  (Compl. ¶¶ 13–23.)  He seeks damages and injunctive relief.  (Compl. ¶ 26.)

Antioch removed on the basis of diversity jurisdiction.  (Dkt. No. 1.)  Plaintiff is a resident of Washington, (Compl. ¶ 2), Antioch is headquartered in Ohio, (Compl. ¶ 3; Dkt. No. 1 ¶ 18), and the citizenship of the unnamed defendants has not yet been alleged or determined, (Compl. ¶ 3).  The amount in controversy exceeds $75,000.  (Dkt. No. 1 ¶ 16.)  Antioch then moved to compel arbitration.

**B.    The Arbitration Agreement**

Plaintiff was offered a position with Antioch as a social media manager on September 8, 2020.  (Okelo Decl. ¶ 4.)  The offer came via email in the form of an offer letter, which he was asked to sign.  (Declaration of Darrell L. Cochran, Ex. 1, Dkt. No. 10.)  Before he signed the letter, Antioch sent him a revised version on September 15, in an email from benefits administrator Karen Snyder.  (Cochran Decl., Exs. 2, 3.)  The only difference between the offer

letters appears to be the start date being pushed back from September 18 to 21.  Plaintiff states

this was due to a delay with his background check.  (Okelo Decl. ¶ 4.)  Otherwise, the letters are

identical.  In the September 15 email, Ms. Snyder asked Plaintiff to "please sign and return [the

hire letter] to me prior to your start date."  (Cochran Decl., Ex. 2 at 2.)  She also provided

additional benefits information and advised him to "feel free to contact me with any questions."

(Id.)

To accept his position, Plaintiff signed and returned the offer letter on September 18.

(Cochran Decl., Ex. 3 at 2.)  The two-page letter includes the following paragraphs at the bottom

of the first page, in the same font as the rest of the letter:

> Your employment is subject to all policies and procedures of the University
> applicable to regular full-time employees as those policies may be adopted or
> revised from time to time at the discretion of the University. By accepting this
> assignment, you acknowledge that as an Antioch University employee, it is your
> responsibility to read, understand, and comply with all University policies
> especially those under the 400 Series related to employment. Policies are located
> on the University website at https://www.antioch.edu/resources/general-
> information/policies/.
>
> Continued employment will be considered acceptance of all Antioch policies,
> including the Mutual Mandatory Arbitration Policy 4.627. With the exception of
> disputes covered by a valid collective bargaining agreement and as otherwise
> prohibited by law, this contract requires all disputes between you and Antioch to
> be resolved by an arbitrator through final and binding arbitration and not by way
> of court or jury trial. There is no right or authority for any dispute to be brought,
> heard or arbitrated as a class or collective action. (The class action waiver does
> not apply to claims for violation of the private Attorney General Act in
> California). Arbitration under this agreement is governed by the Federal
> Arbitration Act and will be conducted by JAMS Arbitration Services, whose rules
> for employment arbitration may be found at www.jamsadr.com. The parties will
> be entitled to the same substantive rights and remedies to which they are entitled
> under applicable law. The arbitrator must apply the same substantive laws, the
> same damages and attorneys' fees and the same statute of limitations as though
> the case were litigated in court. Where required by law, Antioch will pay the
> arbitrator's arbitration fees and any arbitration administrative fees greater than
> those which would have been incurred if the case had been filed in court.

(Declaration of Mary Granger, Ex. A, Dkt. No. 6; Cochran Decl., Ex. 3.)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**Discussion**

**A.      Jurisdiction**

The Court has diversity jurisdiction.  28 U.S.C. § 1332.  There is complete diversity between Plaintiff, a citizen of Washington, and Antioch, a citizen of Ohio.  (Compl. ¶¶ 2–3; Dkt. No. 1 ¶ 18.)  The citizenship of defendants sued under fictitious names—here, Jane and John Does 1–5—is disregarded for the purpose of diversity jurisdiction. 28 U.S.C. § 1441(b).  The amount in controversy exceeds $75,000.  (Dkt. No. 1 ¶ 16.)

**B.      Legal Standard**

The Federal Arbitration Act (FAA) requires courts to enforce valid agreements to decide disputes by arbitration unless there is a legal or equitable basis to revoke such an agreement. 9 U.S.C. § 2; see Kilgore v. KeyBank, Nat. Ass'n, 718 F.3d 1052, 1058 (9th Cir. 2013).  If (1) the parties made a valid agreement to arbitrate and (2) the dispute falls within the scope of that agreement, the Court must enforce the parties' intent to resolve it by arbitration.  Kilgore, 718 F.3d at 1058.  Nevertheless, arbitration agreements are governed by contract law and may be invalidated by "generally applicable contract defenses."  AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011).

The Parties agree that Washington law applies to the instant motion, which concerns the validity and enforceability of an arbitration agreement, an issue of contract law.  Plaintiff alleges that he resided in Washington during the entire period relevant to his claims and both Parties invoke only Washington law, so that is what the Court will apply.  See Patton v. Cox, 276 F.3d 493, 495 (9th Cir. 2002) (courts apply choice-of-law principles of forum state); Burnside v. Simpson Paper Co., 123 Wn. 2d 93, 100 (1994) (law of forum state applied as default unless it is contested, in which case law of state with the most significant relationship governs).

### C.      The Arbitration Agreement Is Valid

The validity of an arbitration agreement depends on mutual assent to essential terms.

Burnett v. Pagliacci Pizza, Inc., 196 Wn. 2d 38, 48 (2020).  Mutual assent here is

straightforward.  Antioch's offer came in the form of a letter offering Plaintiff the position of

social media manager.  (Granger Decl., Ex. A.)  Antioch's benefits administrator, Ms. Snyder,

sent Plaintiff the letter via email and asked him to sign and return it before his start date.

(Cochran Decl., Ex. 2 at 2.)  The letter made employment expressly contingent on agreeing to

arbitration to resolve any disputes arising out the employment:

> this contract requires all disputes between you and Antioch to be resolved by an
> arbitrator through final and binding arbitration and not by way of court or jury
> trial.

(Granger Decl., Ex. A.)  The fact that the letter highlighted the arbitration agreement in this way

indicates it was an essential term of the offer.  The letter also provided a link through which

Plaintiff could access the arbitration agreement and other policies.  (Id.)  Plaintiff accepted when

he signed and returned the offer letter to Ms. Snyder.  (Cochran Decl., Ex. 3 at 2.)

The facts of this case are unlike those on which courts have found mutual assent lacking.

For example, the Ninth Circuit has held that an employee did not manifest mutual assent by

signing an acknowledgment of receipt when he received a revised employee handbook, which

contained a new arbitration clause.  Nelson v. Cyprus Bagdad Copper Corp., 119 F.3d 756, 761

(9th Cir. 1997).  The employee only agreed to "read and understand" the handbook, not be bound

by its provisions, and nothing in the acknowledgment form notified him that he would be

waiving his right to sue in court.  Id.  The same conclusion cannot be drawn here because the

offer letter expressly advised Plaintiff that he would be waiving his right to sue in court by

accepting employment with Antioch.

1    Similarly, the Washington Supreme Court has held an employee did not agree to arbitrate

2    his claims when he signed an employment contract that did not mention arbitration, even though

3    he was later given an employee handbook referenced by it.  Burnett v. Pagliacci Pizza, Inc., 196

4    Wn. 2d 38, 47–48 (2020).  The Burnett Court held there was no mutual assent because the

5    contract did not mention arbitration and the employee was not given the handbook with the

6    arbitration policy until after he signed the contract, so he was not given an opportunity to review

7    the terms of the policy before signing and lacked the knowledge necessary to agree to it.  Id. at

8    50.  Again, that is not the case here.  Antioch's offer referenced the arbitration policy,

9    summarized in plain language what that entailed, and provided a link with access to the full text

10   of the policy.  It also required that he sign the offer itself, not a separate acknowledgment form.

11   Which is what he did.  As a result, Plaintiff has not shown that he lacked knowledge necessary to

12   agree to arbitrate his claims, and the arbitration agreement is presumptively valid.

13                  *1.    The arbitration agreement is not unconscionable*

14   Nevertheless, Plaintiff contends the arbitration agreement is invalid because it is

15   procedurally and substantively unconscionable.  (Dkt. No. 8.)  Either ground is sufficient to

16   invalidate a contract under Washington law.  Burnett, 196 Wn. 2d at 54.  "Procedural

17   unconscionability applies to impropriety during the formation of the contract; substantive

18   unconscionability applies to cases where a term in the contract is alleged to be one-sided or

19   overly harsh."  Id.  Plaintiff has the burden of showing the agreement is not enforceable.  Id. at

20   48.  The Court concludes he has not met his burden on either ground.

21              a.    The arbitration agreement is not procedurally unconscionable.

22   An agreement is procedurally unconscionable if a party to it "lacked meaningful choice."

23   Id. at 54–55.  This analysis focuses on the circumstances of the transaction, including:

24

(1) the manner in which the contract was entered, (2) whether [the party] had a reasonable opportunity to understand the terms of the contract, and (3) whether the important terms were hidden in a maze of fine print . . . .

Id. at 54.

Plaintiff has not shown he lacked meaningful choice here, and the Court does not find the circumstances of the transaction particularly troubling. As noted above, the offer letter referenced the arbitration policy, summarized its central meaning in plain language, and provided a link to the complete policy. (Granger Decl., Ex. A.) Plaintiff had a reasonable opportunity to understand the terms of the contract. It was first offered to him on September 8, and he had to return it before his initial start date of September 18. (See Okelo Decl. ¶ 4; Cochran Decl., Ex. 1.) That time was extended because the offer was revised and sent again to him on September 15, and he did not need to sign it until before his new start date of September 21. (Cochran Decl., Exs. 2, 3.) In addition, the important terms were not "hidden in a maze of fine print." They were on the first page of the offer. The circumstances in Burnett were significantly different. The employee was given a proposed employment contract at an in-person orientation meeting that lasted less than an hour and was told to sign it at the meeting. He was also given an employee handbook, which contained the arbitration policy. But, as noted above, the employment contract did not mention arbitration. And he was told to read the handbook at home—after he had signed the contract. Burnett, 196 Wn. 2d at 42–43.

Plaintiff argues the arbitration agreement is procedurally unconscionable because no one told him to read the arbitration policy, he was not given the entire policy along with the offer letter, no one explained to him how to access the complete agreement, and he was told to sign it "as soon as possible." (Dkt. No. 8 at 7–8.) While the person conveying the offer, Ms. Snyder, did not separately instruct Plaintiff to read the arbitration policy, he was advised to do so in the offer letter itself. (Cochran Decl., Ex. 3 at 1 ("By accepting this assignment, you

acknowledge . . . it is your responsibility to read, understand, and comply with all University policies . . . .").)  In addition, even if Ms. Snyder did not ask him if he understood the policy before signing, she made herself available for any questions he had.  (Cochran Decl., Ex. 2 at 2 ("please feel free to contact me with any questions.").)  And while no one gave Plaintiff step-by-step instructions for accessing the full policy, the offer letter conveyed the essential terms—he would give up his right to go to court by signing—and it is appropriate to assume, from the position for which he was hired (social media manager), that he would have the kind of basic web literacy necessary to access it.  (See Dkt. No. 8 at 3–4 (showing it takes three clicks to access the entire policy).)

Plaintiff states that English is his third language and although he can hold a conversation and complete work tasks in English, he is "not proficient in the English language."  (Okelo Decl. ¶ 2.)  But he does not state that he did not read or understand the offer letter or that he contacted Ms. Snyder to better understand its terms.  He sent a signed offer letter the next day, even though he had more time if he wanted it.  (See Second Declaration of Mary Granger, Ex. C, Dkt. No. 12.)  Finally, Plaintiff was not told to sign the offer "as soon as possible," at least in the record here.  Ms. Snyder's email shows she asked him to "please sign and return [the hire letter] to me prior to your start date."  (Cochran Decl., Ex. 2 at 2; Okelo Decl. ¶ 4.)  (See also Second Granger Decl., Ex. C.)  In any case, any implied or perceived pressure to quickly sign the agreement without understanding it is not conveyed by the record.

In sum, the Court finds Plaintiff did not lack a meaningful choice.  He had enough time to read the offer letter, comprehend its terms, and contact an employer representative for assistance.  The offer letter highlighted, rather than hid, mutual arbitration as an essential term.  As a result, the Court concludes the arbitration agreement is not procedurally unconscionable.

1          b.     The arbitration agreement is not substantively unconscionable.

2          A contract is substantively unconscionable if it is so "one-sided or overly harsh" that it is

3  "shocking to the conscience, monstrously harsh, and exceedingly calloused." Burnett, 196

4  Wn. 2d at 57.  On its face, the arbitration policy here is not one-sided or overly harsh.  It

5  provides for mutual arbitration, meaning that employees and Antioch are both required to

6  arbitrate their claims.  (Cochran Decl., Ex. 4, II.)  The parties are entitled to the same remedies as

7  if the case had been brought in court.  (Id. at II.E.)  Antioch pays fees in excess of those the

8  employee would have incurred if they had filed in court, but the parties will otherwise pay their

9  own costs.  (Id. at II.F.)  The policy does not prohibit an employee from filing a complaint with a

10  federal or state agency.  (Id. at II.H.)

11          Plaintiff argues the arbitration agreement is substantively unconscionable because it

12  requires employees to first submit claims through an internal complaint procedure, which he

13  compares to procedures the Washington Supreme Court held invalid in Burnett.  (Dkt. No. 8 at

14  8–9.)  In Burnett, the Washington Supreme Court held the arbitration policy was substantively

15  unconscionable for several reasons.  First, the policy operated as a complete bar to terminated

16  employees because it required a complainant to first report the matter to a supervisor.  Second, it

17  shortened the statute of limitations for an employee's claim because it did not toll the statute of

18  limitations.  Third, it provided no exception to the supervisor-reporting requirement for situations

19  where the supervisor was the subject of the complaint.  And, finally, it was not mutual, in that it

20  required employees to arbitrate their claims against the employer but did not require the same of

21  the employer.  Burnett, 196 Wn. 2d at 58–59.

22          This comparison is inapt.  As noted above, the arbitration policy applies mutually to

23  employees and Antioch.  In addition, Plaintiff is incorrect that Antioch's grievance policy is

24

ORDER GRANTING MOTION TO COMPEL ARBITRATION - 9

1    mandatory.  He points to no specific language in the arbitration agreement or in Antioch's

2    antidiscrimination complete procedure in support of this argument.  The arbitration policy does

3    not include an exhaustion requirement and does not refer to the antidiscrimination or grievance

4    procedures as prerequisites.  (See Cochran Decl., Ex. 4.)  By its own terms, Antioch's

5    discrimination complaint procedure is an optional process for current employees.  (See Cochran

6    Decl., Ex. 6.)  In addition, unlike the policy at issue in Burnett, it does not shorten any statute of

7    limitations or interfere with an employee's right to file a complaint to government agencies.  It

8    provides:

9           Filing a complaint under this policy does not preclude an employee from filing a
            charge of employment discrimination with the EEOC, or State and Local
10          agencies, within the time frames established by those agencies. All complainants
            have a right to bypass this internal procedure and file with a federal, state, or local
11          agency.

12   (Cochran Decl., Ex. 6, sec. VIII.L.)  In contrast, under the policy in Burnett, employees waived

13   their right to raise a claim "in any court or other forum, including arbitration," if they did not first

14   use the internal procedure.  Burnett, 196 Wn. 2d at 57–58.  In short, the arbitration agreement

15   does not have any of the hallmarks of the one at issue in Burnett, and Plaintiff has not shown it is

16   otherwise so one-sided or overly harsh as to be substantively unconscionable.

17          **D.      The Arbitration Agreement Encompasses Plaintiff's Claims**

18          The second element that must be met to require arbitration here is that the dispute must

19   fall within the scope of the agreement.  Kilgore v. KeyBank, Nat. Ass'n, 718 F.3d 1052, 1058

20   (9th Cir. 2013).  Under the policy, all employees

21          agree to binding arbitration of claims related to their employment and termination
            of employment including, but not limited to, discrimination, harassment, breach
22          of contract, defamation, wrongful discharge, and wage and hour claims and all
            other claims based in the common law or federal, state or local laws.

23

24

1   (Cochran Decl., Ex 4, sec. II.)  Plaintiff's claims are for employment discrimination, racial

2   discrimination, retaliation, negligence, negligent infliction of emotional distress, intentional

3   infliction of emotional distress, and vicarious liability under agency law.  (Compl. ¶¶ 13–23.)

4   These claims are all based on facts arising out of his employment with Antioch and are therefore

5   covered by the arbitration agreement.

6                                                          **Conclusion**

7         In sum, the Court finds Plaintiff's claims are all subject to arbitration.  The arbitration

8   agreement is valid because he knowingly assented to an offer of employment made contingent on

9   arbitration for all employment-related claims when he signed and returned the offer letter.  The

10  agreement is not procedurally unconscionable because Plaintiff had a meaningful opportunity to

11  understand its terms and consent to them.  It is not substantively unconscionable because it was

12  not overly harsh or one-sided.  Finally, the arbitration agreement covers all of Plaintiff's claims,

13  which all arise out of his employment relationship.  As a result, the Court is bound to enforce the

14  agreement.  Plaintiff's claims are DISMISSED without prejudice to his right to raise them under

15  the arbitration agreement.

16        The clerk is ordered to provide copies of this order to all counsel.

17        Dated April 28, 2022.

18

19                                                              Marsha J. Pechman
                                                                United States Senior District Judge

20

21

22

23

24